GETTY, Executrix, Appellant, vs. SCHANTZ and others, Respondents.

*November 1 — November 22, 1898.*

(1) *Appeal: Nonsuit: Findings of fact.* (2, 3) *Promissory notes: Guaranty of collection: Discharge: Laches.*

1. A judgment dismissing the action upon a trial by the court will not be reversed on appeal merely because of the failure of the court to make findings of fact and conclusions of law, as required by sec. 2863, R. S. 1878, if the evidence shows that the plaintiff had in fact no cause of action.

2. A guarantor of the collection of notes will be discharged if the holder fails to use due diligence to prosecute his legal remedies against the maker.

3. Where the holder of a first mortgage upon property was also the holder of a second mortgage thereon, given to secure two notes due at different dates, the collection of which was guaranteed by the defendants, *held*, that it was not due diligence on his part merely to commence an action to foreclose the second mortgage fifteen months after the first of such notes became due and while an action to foreclose the first mortgage was pending by which the property would be exhausted; but his failure to commence an action at law upon the first note within a reasonable time after it became due, and one upon the second note after it was declared due under an option clause, operated to discharge the guarantors.

APPEAL from a judgment of the circuit court for Waupaca county: CHAS. M. WEBB, Circuit Judge. *Affirmed.*

This was an action by the plaintiff, as executrix of the will of Horton Cottrell, deceased, upon two written guaranties of collection. On April 13, 1889, the New London Furniture Company, a corporation, made two promissory notes, one for $2,000 and one for $2,500, payable to the order of Horton Cottrell, with interest at seven per cent. per annum; the first named being payable June 1, 1892, and the second June 1, 1894. These notes were secured by a mortgage upon a manufacturing plant owned by the mortgagor, and contained a stipulation that in case of the nonpayment of

interest the whole sum of principal and interest should become due and payable at the option of the payee. Upon the back of these notes the following guaranty was written: "In consideration that the within-named payee will give credit to the within-named maker upon the within note, and for the purpose of obtaining such credit, we, the undersigned stockholders of said corporate maker, hereby guarantee the collection of the within note, with all costs." This guaranty was signed by all of the defendants prior to the delivery of the notes to Cottrell, and the notes were received by Cottrell upon the faith and credit of the guaranty. It appears that the defendants who signed the guaranty were all stockholders in the New London Furniture Company.

This action was commenced April 28, 1897; and the complaint alleges, among other things, that the mortgage security has been entirely exhausted, and that personal judgment has been obtained against the corporation, and execution thereon was returned unsatisfied January 18, 1897, and that all remedies against the corporation have been exhausted, and that there is still due upon the notes $6,276.99, with interest. It is further alleged in the complaint that the corporation at the time of the maturity of the notes was, and ever since has been, wholly insolvent, and unable to pay the same or any part thereof. The defendants answered separately, but their answers are practically identical. They admit the execution and delivery of the notes, but allege that they have been discharged of their liability by lack of diligence in the prosecution of legal remedies against the corporation. They further admit the hopeless insolvency of the corporation since October, 1893.

Upon the trial there was practically no dispute in the facts. It appeared that the first payment of interest was made on or about June 1, 1890, but that the interest due June 1, 1891, was not paid, nor was any payment thereafter

made by the corporation, although it continued to carry on business; and the time when it ceased to do business does not appear. Cottrell did not exercise his option to declare the principal due, nor did he commence any action, until September 19, 1893, when he declared the whole sum due and commenced an action of foreclosure, making the defendants in this action parties, and demanding a personal judgment against them for deficiency. It further appears that Cottrell held a prior mortgage upon the entire plant of $1,500, and at the time of the commencement of the foreclosure action just named this prior mortgage was in process of foreclosure and ready for judgment. On the 7th of October, 1893, judgment of foreclosure was rendered upon the prior mortgage; and on the 18th of January, 1895, sale was had of the premises, resulting in a surplus of $359.60, which sum was paid into court, and upon the 27th of March, 1895, was paid over to the plaintiff to apply upon the second mortgage. Judgment of foreclosure and sale upon the second mortgage was rendered November 16, 1893, which judgment contained a provision for a judgment for deficiency against these defendants in case the premises were insufficient to pay the mortgage. On the 18th of June, 1895, judgment for deficiency was rendered against the corporation and against all the defendants for the amount of the second mortgage, less the sum of $359.60, which had been realized as a surplus upon the first mortgage sale. November 11, 1895, these defendants appealed from the judgment for deficiency, and from the provision in the original judgment which authorized any judgment for deficiency against them; and both judgments were reversed by this court October 13, 1896. *Cottrell v. New London F. Co.* 94 Wis. 176. In December, 1896, an execution was issued against the corporation upon the judgment for deficiency, which was returned unsatisfied January 18, 1897. The evidence further tended to show that during the year 1892, and perhaps early in

1893, Cottrell's agent demanded payment of the amounts due, and that the defendants *Demming, Wright,* and *Knapstein,* who were the managing officers of the corporation, requested the plaintiff not to foreclose, but to wait, whereupon the plaintiff did wait until September, 1893, before commencing the foreclosure action.

These facts appearing on the plaintiff's own showing, the defendants moved for a nonsuit, which motion was granted; and judgment was rendered dismissing the action without prejudice, from which the plaintiff appeals.

For the appellant there were briefs by *Goodrick & Goodrick,* and oral argument by *E. J. Goodrick.* They argued, among other things, that the plaintiff had not been guilty of laches, but had exhausted her legal remedies for the collection of the indebtedness represented by the notes without avail. A mere failure to exercise her option to declare the principal sum due on default in payment of interest would not operate to discharge the guarantors. Even a failure to sue promptly for each instalment of unpaid interest could do no more than discharge them from liability for such interest. *Ten Eyck v. Tibbits,* 1 Caines, 427; *Thomas v. Woods,* 4 Cow. 173; *Northern Ins. Co. v. Wright,* 76 N. Y. 445. Delay to prosecute will not discharge a guarantor unless it has continued for a long time. *Day v. Elmore,* 4 Wis. 190; *McFarlane. v. Milwaukee,* 51 id. 691; *Hoover v. McCormick,* 84 id. 215; *Raymond v. Sheboygan,* 76 id. 335. The guarantors must have known that the notes were unpaid and consented to the delay of prosecution, since the debt was their own in a corporate capacity. The plaintiff was not bound to sue at law. The remedy by foreclosure of the mortgage and judgment for deficiency is a usual, legal remedy, and is full, adequate, and complete. *Dyer v. Gibson,* 16 Wis. 557; *Borden v. Gilbert,* 13 id. 670. When the last note became due the maker was hopelessly insolvent. The mortgage security was apparently ample to satisfy all the debts. If the plaint-

iff had failed to exhaust that, the guarantors would have been discharged. *Cottrell v. New London F. Co.* 94 Wis. 176.

For the respondents there were briefs by *Winkler, Flanders, Smith, Bottum & Vilas* and *F. C. Weed,* and oral argument by *Mr. Weed* and *Mr. J. G. Flanders.*

Winslow, J. This action was tried by the court, and it was manifest error to grant a nonsuit. In all actions tried by the court, the statute requires findings of fact and conclusions of law to be made. R. S. 1878, sec. 2863. If the court is of opinion upon the facts found that the plaintiff has made no case entitling him to judgment, the complaint should be dismissed upon the findings. *Dietz v. Neenah,* 91 Wis. 422. Still, if the evidence shows that the plaintiff has in fact no cause of action, a judgment of dismissal will not be reversed merely because of the failure to make findings. *Dietz v. Neenah, supra; Yahr v. Joint School Dist.* 99 Wis. 281. In the present case there was substantially no dispute upon the facts; hence the question is whether, upon the undisputed facts, the judgment of dismissal of the complaint was right.

The law governing the rights and liabilities of the guarantor of collection of a note is quite well settled in this court. He agrees to pay the debt upon the condition that the guarantee shall diligently prosecute the principal creditor without avail, using the ordinary legal means to that end, and exhausting any security that he may have before proceeding against the guarantor. *Day v. Elmore,* 4 Wis. 190; *Cottrell v. New London F. Co.* 94 Wis. 176. Mere delay to prosecute the principal for a short time is not sufficient to negative the use of due diligence, but such delay may be continued so long as to release the guarantor as matter of law. *Day v. Elmore, supra; McFarlane v. Milwaukee,* 51 Wis. 691. The prosecution of legal remedies against the principal to final judgment and execution within a reasonable time after the

debt falls due is a condition precedent to the right of recovery against a guarantor, and this condition is not satisfied or done away with by proof that the principal was insolvent and that an action against him would have been fruitless. *French v. Marsh*, 29 Wis. 649; *Salt Springs Nat. Bank v. Sloan*, 135 N. Y. 371.

No arbitrary period of time has been set during which the creditor may delay prosecution of the principal without discharging the guarantor from liability; but it has been said that delay for *two years or more,* unexplained, will discharge the guarantor. *McFarlane v. Milwaukee, supra.* It is scarcely necessary to say that this does not mean that no delay for a less time than two years will discharge the guarantor. The principle has been frequently stated that due diligence, in the absence of any special facts, requires the institution of suit at the first regular term after maturity of the obligation, and the obtaining of judgment and execution thereon as soon as practicable by the ordinary rules and practice of the court. 1 Brandt, Suretyship & G. § 101; *Voorhies v. Atlee*, 29 Iowa, 49, and cases cited. Unexplained delays of six, seven, and nine months have been held to discharge a guarantor (1 Brandt, Suretyship & G. § 101); and it is said in *Salt Springs Nat. Bank v. Pratt*, 135 N. Y. 423, that an unexplained delay of four months in the commencement of an action, after the time when the necessity for its commencement has arisen, is not due diligence.

Without, however, attempting to set any arbitrary time as the time within which suit must be brought, we are entirely certain that the facts in the present case show failure to prosecute legal remedies against the principal with due diligence. One note was due June 1, 1892, and the other June 1, 1894. There was nothing to prevent the commencement of an action on the first note as soon as it fell due. But no suit was commenced until September, 1893, a period of over fifteen months; and then no suit at law was com-

menced upon the note, but simply an action for foreclosure of the mortgage, which could not result in a judgment for deficiency before the expiration of at least a year and two months from the time of the commencement of the action. So far as the first note is concerned, these facts are entirely insufficient, in the light of the authorities, to constitute due diligence. As to the second note, the facts are somewhat different, but the result is the same. It was declared due under the option clause in September, 1893; but no action, except the foreclosure action aforesaid, was ever commenced to collect it. In the light of the circumstances, the commencement of the foreclosure action cannot be called diligent prosecution of legal remedies. In fact, it was little, if any, better than no action at all. The plaintiff already had a prior mortgage upon the entire property in process of foreclosure and ready for judgment. The mortgage in question here was the second lien upon the property. Upon the sale under the first mortgage the surplus could be immediately applied for, and, when obtained, indorsed upon the second mortgage, and thus the security would be exhausted. Thus, the foreclosure of the second mortgage was of no practical use. There is nothing in our statute which changes the well-known common-law rule that an action at law may be maintained upon the note concurrently with a suit to foreclose the mortgage. This was clearly the course which the mortgagee should have taken. No useful purpose could be attained by foreclosure of the mortgage, because the previous foreclosure would dispose of the mortgaged property and exhaust the security before it could be done under a judgment upon the second mortgage; hence the exercise of due diligence called for the prosecution of the personal remedy with all reasonable speed. Had it been so prosecuted even in September, 1893, judgment might have been obtained and execution issued in October, 1893, whereas the personal judgment for deficiency in the foreclosure action was not obtained

until June, 1895,— more than a year and eight months later. Independent of all other questions in the case, and conceding that there was no lack of diligence prior to September, 1893, we think it clear that the failure to then prosecute a suit at law upon the notes was a failure to exercise due diligence in the prosecution of legal remedies against the principal, which discharges the sureties.

In this view of the case, the alleged requests of some of the defendants for further time in 1892 and earlier in 1893 are of no consequence.

